**E-FILED**
Friday, 01 October, 2004  04:50:45 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| REBECCA LUCERA, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Baker |
| | ) | No. 02-2268 |
| v. | ) | |
| | ) | |
| CINGULAR WIRELESS, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

### EXHIBITS L-S  ATTACHED TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 7.1

## APPENDIX

Exhibit A ................................................................Affidavit of Jack Johnston

Exhibit B ................................................Deposition Transcript of Jack Johnston

Exhibit C ..............................................Deposition Transcript of Grace Seymour

Exhibit D ..................................................................Deposition of Jon Lucera

Exhibit E ...............................................................Deposition of Joseph Schnaufer

Exhibit F ............................................................................................Complaint

Exhibit G ..................................................................Affidavit of Debbie Thompson

Exhibit H ...........................................................................Deposition of Cheryl Bentley

Exhibit I ................................................................Deposition of Sandy Gammage

Exhibit J .....................................................................Affidavit of Nancy Wells

Exhibit K .......................................................................Deposition of Plaintiff

Exhibit L ..............................................................Affidavit of Cheryl Bentley

Exhibit M ..................................................................Affidavit of Connie Gass

Exhibit N .....................................................................Affidavit of Anita Moxley

Exhibit O ..................................................................Statement of Elizabeth Ross

Exhibit P ........................................................Deposition of Margaret Franklin

Exhibit Q ..............................................................Affidavit of Margaret Franklin

Exhibit R ...............................................................Deposition of Jim Klimas

Exhibit S ..............................................................Affidavit of Jim Klimas

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| REBECCA LUCERA, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Baker |
| | ) | |
| | ) | No. 02-2268 |
| v. | ) | |
| | ) | |
| CINGULAR WIRELESS, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF CHERYL BENTLEY

I, Cheryl Bentley, being first duly sworn on oath, depose and state as follows:

1.    I am currently employed as a Senior Human Resources Manager for Cingular Wireless in Schaumburg, Illinois. I report directly to Jim Klimas, Director of Human Resources.

2.    In the summer of 2001, I held the position of Human Resources Manager.

3.    In my capacity as Human Resources Manager my duties include conducting investigations into allegations of misconduct by Cingular employees.

4.    In July 2001, there was a policy in effect regarding Spousal Travel which applied to employees in the Rantoul Call Center.

5.    A true and accurate copy of the policy in effect in July 2001 is attached hereto as Exhibit 1.

6.    The policy states as follows: "With advance approval from the employee's supervisor, in those instances when it is deemed necessary for your spouse to accompany you on company business, reimbursement of expenses will be according to your Company's Schedule of Authorizations."

Chicago 488511

1

EXHIBIT

L

7.    Under this policy, only if the Luceras had received advance approval from their supervisors, could they have jointly filed one Employee Expense Reimbursement form for their trip to Ocala, Florida.

8.    On August 16, 2001, Jack Johnston faxed a copy of the Employee Expense Reimbursement form submitted by Rebecca Lucera to Elizabeth Ross from his office in Rantoul to the Human Resource's Office in Schaumburg, Illinois.

9.    There was $1376.02 in expenses contained on the Employee Reimbursement Request form submitted by the Luceras.

10.    A true and accurate copy of the expense form submitted by Jon Lucera is attached hereto as Exhibit 2.

11.    On August 21, 2001, Peggy Franklin and I conducted a telephone interview of Joseph Schnaufer the Director at the Ocala, Florida Call Center and former Director of the Customer Operations for the Rantoul Call Center.

12.    A true and accurate contemporaneous summary of our interview with Mr. Schnaufer is attached hereto as Exhibit 3.

13.    Mr. Schnaufer confirmed that Rebecca and Jon Lucera had visited the Ocala Call Center from approximately July 19 through July 24, 2001.

14.    He also indicated that the trip was an informal visit and that he had agreed to show Rebecca and Jon Lucera around the call center.

15.    According to Mr. Schnaufer, no formal interviews took place during the Lucera's visit to Ocala.

16.    At the time of our August 21 interview of Mr. Schnaufer, he stated that he had extended an offer of employment to Mr. Lucera but had not yet extended an offer to Ms. Lucera.

17.    Mr. Schnaufer indicated that he did not contact Mr. Johnston prior to the trip as he assumed that Rebecca and Jon Lucera had made the necessary arrangements and obtained the proper authorization and approval prior to the trip.

18.    He also indicated that he never agreed to cover any of the expenses incurred by the Luceras from Ocala's budget and assumed that they had made the proper arrangements for reimbursement of their expenses.

19.    On August 22, 2001, Ms. Franklin and I conducted a telephone interview of Ms. Lucera regarding the trip she and her husband had taken to Ocala, Florida.

20.    Ms. Lucera stated that she was not formally interviewed when she went to Ocala.

21.    According to Ms. Lucera, she was the one who contacted Elizabeth Ross to see if she would sign-off on the expense form for the trip she and her husband had taken to Ocala.

22.    Ms. Lucera informed us that she had sent the request reimbursement form to Elizabeth Ross.

23.    Also on August 22, 2001, Ms. Franklin and I conducted a telephone interview with Jon Lucera.

24.    Mr. Lucera informed us that he had asked his wife about submission of the approval form and that she suggested that the form be submitted to Elizabeth Ross.

25.    On August 27, 2001, Ms. Franklin and I interviewed Debbie Thompson regarding the Lucera's trip to Ocala.

26.    Ms. Thompson advised us that Mr. Johnston had stated in a July meeting, prior to the Luceras trip to Florida, that he wanted to approve expenditures.

27.     Ms. Thompson also indicated that Ms. Lucera had told her that she had not told Mr. Johnston about her trip to Ocala and had no intention of telling him that she was going to Ocala.

28.     Ms. Thompson also informed us that at some point around the time of Rebecca and Jon Lucera's trip to Ocala, Mr. Johnston approached her and asked her if she knew Rebecca Lucera's whereabouts. Ms. Thompson recalled feeling uncomfortable that she knew that Ms. Lucera was in Ocala but that Mr. Johnston was unaware of her whereabouts.

29.     On August 29, 2001, Ms. Franklin and I conduced a follow-up interview with Ms. Lucera. During that interview Ms. Lucera confirmed that she was aware of Mr. Johnston's requirement that he review all expenses for all Rantoul Call Center employees. She indicated that that was a change for them. According to Ms. Lucera, they had over four years of being empowered and now Jack Johnston wanted to see the expenses.

30.     In about June 2002, Elizabeth Ross informed me that she had not approved any expense reports for Rebecca Lucera at any time.

31.     Ms. Ross further indicated that under normal business operations she is not authorized to sign expense reports for employees of the Rantoul Call Center.

32.     Ms. Ross provided me with a statement containing this information. A true and accurate copy of the statement is attached hereto as Exhibit 4.

33.     Based on the interviews with Ms. Gass, Ms. Thompson and Ms. Lucera as well as the e-mails forwarded from Ms. Gass, we concluded that Ms. Lucera was aware of Mr. Johnston's pre-approval process and the appropriate procedures for submitting expense reimbursements.

34. During the investigation, Ms. Franklin and I reviewed the length of interview trips taken by other employees and determined that the average was two to three days. We were unable to find any trips that fell within the range of five days in length.

35. As a result, it was determined that the length of the trip taken by the Luceras was excessive and not within the customary range.

36. Additionally, the Employee Reimbursement Request form included a dinner on July 21, 2001 in the amount of $140.23 for Jon Lucera, Rebecca Lucera and Joe Schnaufer.

37. The dinner was determined to be excessive and extravagant and outside of what was reasonable and customary for such expenses.

38. Finally, a conclusion was reached that Plaintiff purposefully circumvented the expense reimbursement process by submitting her expenses outside of the call center hierarchy. It was determined that there was no precedent for an employee going outside of the call center for expense reimbursement approval.

39. At the conclusion of the investigation, Ms. Franklin and I reached a recommendation that Ms. Lucera should be terminated.

40. Upon conclusion of our investigation, Cingular's Human Resources Department (including Jim Klimas, Peggy Franklin and myself); Cingular's Legal Department; Grace Seymour, the Regional Vice President; and Jack Johnston met to discuss what action to take with regard to the Luceras.

41. A collaborative decision, involving all of the individuals and Departments named above, was subsequently made to terminate Ms. Lucera and issue a final warning to Jon Lucera.

42. Cingular's Ethics Department concurred in the decision to terminate Ms. Lucera and to issue a final warning to Mr. Lucera.

43.    Ms. Lucera was terminated on August 30, 2001.

44.    A true and accurate copy of the Incident Report summarizing the reasons for Ms. Lucera's termination is attached hereto as Exhibit 5.

45.    The reasons for Ms. Lucera's termination include the following: a) her failure to seek approval for days off and failure to obtain proper approval for business trip expenses despite knowing that approval should be obtained from Mr. Johnston; b) her submission of an expense report containing expenses Jack Johnston previously told her were not covered by the Rantoul Call Center; c) her attempt to circumvent Mr. Johnston and Rantoul Call Center management in the approval process for her expenses; and d) her attempt to seek reimbursement for excessive expenses incurred on a trip which exceeded what was customary for the length of such trips.

46.    It was determined that Ms. Lucera had made a significant error in judgment and that her behavior was inappropriate and unacceptable.

47.    The final warning was issued to Mr. Lucera because he was determined to have been absent on company time without express notification and/or corresponding approval from his immediate supervisor;   attempted to process an expense reimbursement in conjunction with those of his wife outside of established approval channels and in circumvention of all vertical levels of his immediate management hierarchy; and certain expenses were deemed excessive on an interview trip which exceeded what was customary for the length of such trips.

48.    A true and accurate copy of the Incident Report summarizing the basis for Mr. Lucera's final warning is attached hereto as Exhibit 6.

49. Because it was determined that the expenses Jon Lucera incurred and submitted for reimbursement were unapproved and that he had not followed established protocol, Jon Lucera was instructed to resubmit his Employee Expense Reimbursement form.

50. Different disciplinary action was taken with regard to Jon Lucera because during the course of the investigation it was determined that his conduct was different from and not as egregious as the violations committed by Ms. Lucera.

51. With regard to Ms. Lucera, Ms. Thompson informed me that Ms. Lucera had stated that she had not told Jack Johnston that she was going to be in Ocala and had no intention of doing so. In light of all the evidence, we determined that such conduct demonstrated a deliberate intent by Ms. Lucera not to comply with Mr. Johnston's pre-approval process.

52. Additionally, during the course of our investigation we concluded that it was Ms. Lucera who decided that the expense reimbursement form should be submitted to Elizabeth Ross and who contacted Ms. Ross regarding approval of the expenses. It was also Ms. Lucera who ultimately forwarded the expense form to Ms. Ross for approval.

53. Moreover, based on the interviews we had with Ms. Gass and the e-mail Ms. Lucera sent to Ms. Gass, we determined that Ms. Lucera was aware that Jack Johnston not only required that approval be given in advance for interview trips, but that she was also aware that he would no longer allow Rantoul to reimburse employees for interview trips to other call centers.

54. We were unable to determine that Mr. Lucera was similarly aware of Jack Johnston's policy that Rantoul would no longer reimburse employees for interview trips which had been relayed to the Area Managers.

55. During the August 22, 2001 telephone interview with Ms. Lucera, she indicated that she had some "issues" although she did not specify the nature of the "issues."

56. In response, Ms. Franklin and I requested that Ms. Lucera put the "issues" in writing so that they could be addressed.

57. Prior to reading the e-mails sent by Ms. Lucera to Ms. Franklin on August 27th and 28th, I had no knowledge that Ms. Lucera had any issues or concerns regarding Mr. Johnston.

58. Mr. Johnston was not informed about the complaints made against him by Ms. Lucera as contained in her August 27th and 28th e-mails until after Ms. Lucera had been terminated.

59. The complaints made by Ms. Lucera about Mr. Johnston played no role in the investigation of the allegations of misconduct by Ms. Lucera and did not influence the decision to terminate Ms. Lucera.

60. The investigation into Ms. Lucera's allegations about Mr. Johnston was treated separately from our investigation into the Luceras' trip to Florida.

61. Ms. Lucera's August 27th and 28, 2001 e-mails were never considered or even mentioned during the discussions between Human Resources, the Legal Department, Grace Seymour and Jack Johnston relating to what actions to be taken with regard to the Luceras' trip to Ocala.

62. No allegations of impropriety by Mr. Johnston were ever discussed during the process which resulted in Ms. Lucera's termination and Mr. Lucera's warning.

63. On September 21, 2001, I interviewed four female employees who reported directly or indirectly to Mr. Johnston in the Rantoul Call Center regarding whether they had any issues or concerns about their work situation or had experienced any unfair or inappropriate treatment. None of the women led me to believe they had any concerns about Mr. Johnston's personal conduct or the manner in which they were treated by Mr. Johnston.

This affidavit is based upon my personal knowledge.  It is true and correct to the best of my knowledge, information and belief.  If sworn as a witness, I could testify competently to the foregoing.


THIS ENDS MY AFFIDAVIT.


Cheryl Bentley


Subscribed and sworn to
before me this _30th_ day of
September 2004.

Notary Public

"OFFICIAL SEAL"
Patti A. Bender
Notary Public, State of Illinois
My Commission Expires 10/17/2004

Chicago 48851 1                                          9



SBC Communications Inc.
and Participating Companies
Management Employee Expense Guidelines

Page 16
November 2000

### 4.2    Spousal Travel



With advance approval from the employee's supervisor, in those instances when it is deemed necessary for your spouse to accompany you on a business trip, reimbursement of expenses will be according to your Company's Schedule of Authorizations.

Additionally, IRS rules that stipulates expenses attributable to spouse travel are not deductible by the Company unless at least one requirement below is met:

the spouse is an employee of the company and has a business purpose for the travel;
or
the travel of the spouse is for a bona fide business purpose.

Supportive documentation should include a copy of the agenda for the trip and any other descriptive brochures or official materials, especially those showing spousal agendas or other spousal participation in the business activities. Actual spousal participation in or facilitation of business activities and/or discussions is generally required.

### 4.3 Foreign Currency

Business expenses incurred in foreign currencies must be converted to U.S. dollars on the expense documentation.  Employee must also document the conversion rate used.

### 5.0 NOT AWAY FROM HOME

In addition to the requirements stated in Section 3.0, business entertainment and meals must meet IRS standards.  The following are clarifications of IRS standards that are required for tax deductibility.  This is not necessarily intended to define whether the expenditure is a legitimate reimbursable business expense.

**Expenses must be directly related to or associated with the active conduct of Company business.**

PROPRIETARY
Not for use or disclosure outside SBC Communications Inc.
And Participating Companies except under written agreement



EXHIBIT

1

D00086

*Expense Rpt revised*



# ✕ cingular ℠
### W I R E L E S S

Revised 1/12/01

## Employee Expense Reimbursement

**Name:** Jon Lucera        **Date:** 3-Aug-01        **Page:** 1 of 1

**Business Purpose:** Interviews with Ocala Florida for Jon Lucera & Rebecca Isom-Lucera

**Employee No:** 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        **Emergency:**        **3rd Party:**

| Date: MoDyYr | Description | Transp $ | # Attendees per Meal | Meals $ | Lodging $ | Misc. $ |
|---|---|---|---|---|---|---|
| 7/19/01 | Lodging | | | | 74.00 | |
| 7/20-7/23 | Lodging | | | | 343.00 | |
| 7/20/01 | Round trip Airline Ticket | 193.00 | | | | |
| 7/20/01 | Round trip Airline Ticket | 193.00 | | | | |
| 7/20-7/24 | Rental Car | 187.56 | | | | |
| 7/23/01 | Gas | 18.40 | | | | |
| 7/20/01 | Meal | | 2 | 35.05 | | |
| 7/21/01 | Meal | | 2 | 40.57 | | |
| 7/21/01 | Meal | | 3 | 140.23 | | |
| 7/22/01 | Meal | | 2 | 29.79 | | |
| 7/22/01 | Meal | | 2 | 50.81 | | |
| 7/23/01 | Meal | | 2 | 70.61 | | |
| | | | | | | |
| | | | | | | |
| | **Item Total (pg 1):** | 591.96 | XXXXXXXX | 367.06 | 417.00 | - |
| | **Item Total (from pg 2):** | - | XXXXXXXX | - | - | - |
| | **Item Total (pg 1 + pg 2):** | 591.96 | XXXXXXXX | 367.06 | 417.00 | - |

**ExpenseTotal:** 1,376.02

### Distribution Totals

| | Company | Account | Job Code | Organization | Product | Cell # | Dist. Total |
|---|---|---|---|---|---|---|---|
| **TRANS** | 4400 | | 2000 | 410007 | 0000 | | 591.96 |
| **MEALS** | 4400 | | 2000 | 410007 | 0000 | | 367.06 |
| **LODG** | 4400 | | 2000 | 410007 | 0000 | | 417.00 |
| **MISC** | 4400 | | 2000 | | 0000 | | |
| **MISC** | | | | | | | |
| **MISC** | | | | | | | |
| **MISC** | | | | | | | |

**Distribution Total:** 1,376.02

I certify that the expenditures set forth above of: **$1,376.02**        dollars
were incurred by me on behalf of Southwestern Bell Mobile Systems.

**Signature:** *Jon M Lucera*        **Date:** 8/10/01        **Tel No:** 217-893-2635
**Title:** Call Center Leader        **Location:** Rantoul Call Center

**Authorized By:**
**Signature:**        **Date:**        **Tel No:** 847-765-3807
**Name:** Elizabeth Ross
**Title:** Director of Operations        **Delegated:**

**Release Ck T :** Jon Lucera

# ✕ cingular ℠

**EXHIBIT**
2

D00087





Reservation for: **LUCERA , JON**

| | | | |
|---|---|---|---|
| Booking Number : | **003950356** | Nights: | 1 |
| City: | **INDIANAPOLIS** | Rooms: | 1 |
| Hotel Name: | **RED ROOF INN AIRPORT** [INFO] [MAP] | Adults: | 2 |
| Check In: | **19 Jul 2001** | Child: | 0 |
| Check Out: | **20 Jul 2001** | *Beds: | 2 |
| | | Smoking: | N |

Cancel Policy: **HRN. INC Bookings are subject to a $50 USD FEE TO ANY CANCELLATION/CHANGE**
**If cancellation occurs within the Cancellation Policy period, a one-night charge will be assessed.**

Cancel Period: **24 HOURS**

Detail Information



| Date of Stay | Description | NTS | RMS | Room Rate | Rate w/Tax | Total |
|---|---|---|---|---|---|---|
| 19 Jul 2001 | 2BEDS | 1 | 1 | 65.95 | 74.00 | USD $74.00 |
| | | | | | Total: | USD $74.00 |



Send an inquiry to one of our customer service representatives

Request an email confirmation of your reservation

**In the U.S. 817-731-6420  In Europe 00800 10 66 10 66**
**Other: 214-369-1264**

Home | Customer Care | About Us | Hot Deals | Coupon

Copyright © 1998-2001, Hotel Discounts, Hotel Reservations Network. All rights reserved.

D00088

08/16/01  15:55  FAX 217 893 2640    CINGULAR WIRELESS    ☒005



## COURTYARD
### Marriott

## GUEST CHARGES SUMMARY

**Toll Free Reservations (800) 321-2211**

*THANK YOU FOR SELECTING COURTYARD BY MARRIOTT FOR YOUR TRIP. WE TRUST THAT YOUR EXPERIENCE WITH US HAS INCLUDED WARM AND GRACIOUS SERVICE, AND THE TYPE OF ACCOMMODATIONS EXPECTED.*

*WE LOOK FORWARD TO SERVING YOU AGAIN ON FUTURE TRIPS. FOR ADDITIONAL RESERVATIONS, CALL OUR TOLL-FREE RESERVATION NUMBER, (800) 321-2211.*

OCALA COURTYARD Courtyard Staff

JON LUCERA
1013 THOMAS CT
RANTOUL IL 61866

CINGULAR WIRELESS

| | |
|---|---|
| ROOM | 113    BARD |
| ROOM TYPE | GENR |
| NO. OF GUESTS | 1 |
| RATE | 81.00 |
| CLERK | |

ARRIVE 20Jul01    TIME 07:08p    DEPART 24Jul01    TIME    FOLIO # ZW-37312

| DATE | REFERENCE NUMBER | DESCRIPTION | CHARGES | CREDITS |
|---|---|---|---|---|
| 20Jul01 | RP113 | ROOM CHARGE | 81.00 | |
| 20Jul01 | RT113 | ROOM TAX | 4.86 | |
| 21Jul01 | RP113 | ROOM CHARGE | 81.00 | |
| 21Jul01 | RT113 | ROOM TAX | 4.86 | |
| 22Jul01 | RP113 | ROOM CHARGE | 81.00 | |
| 22Jul01 | RT113 | ROOM TAX | 4.86 | |
| 23Jul01 | RP113 | ROOM CHARGE | 81.00 | |
| 23Jul01 | RT113 | ROOM TAX | 4.86 | |
| 24Jul01 | AX113 | AMERICAN EXPRESS | | 343.44- |

```
***********************************
*  Your AMERICAN EXPRESS card on file  *
*  will be charged $   343.44           *
***********************************
```

**    BALANCE    **                                    .00

**To enroll in Marriott rewards, call • 1-800-249-0800**

D00089

SIGNATURE_____

FORM 6-2784 REV. 3/00

Ø004                    CINGULAR WIRELESS              08/16/01  15:55  FAX 217 893 2640

(3)

✱ Please check your car for personal effects. ✱

# AVIS。  We try harder®

## TRANSACTION RECORD

| RENTAL NUMBER | CAR NUMBER | CAR GROUP |
|---|---|---|
| 40619573 | 2435554 | E |

LUCERA,JON

CV  CAXXXXXXXXX1006

```
OUT MCO 20JUL01/1009 MI-18578
IN  MCO 24JUL01/1751 MI-18985
  407 MI@    .00=
        HR@  12.67=
        DY@  24.99=         149.99
     1 WK@ 149.99=          149.99
DISCOUNT=        .0
*$2.45/DY SURCHG=            12.25
ONE WAY FEE/MISC=
** 9.80% FEE                14.70
TAXABLE SUBTOT             176.94
TAX   6.000%                10.62
FUEL SERVICE
LDW
TOTAL CHARGES             187.56
*FLA SURCHG-BATTERY/TIRES
*.40/DY VEH LIC FEE RECOV
**CONCESSION RECOVERY FEE
```

✱ Please check your car for personal effects. ✱

Thank you for renting from Avis.
We value your business. Have a safe trip.

366 1052562839 6
****DUPLICATE****

366 1052562838 5
****DUPLICATE****

D00090



Perkins Restaurant & Bakery, Inc
3435 SW College Rd
Ocala, Fl 34474
Credit Card
Term ID: 1
Date:        Jul22'01 10:42AM
Card Type:   AMEX
Acct #:      37853044208i006
Exp Date:    11/01
Auth Code:   582832
Check:       2097
Table:       71/1
Server:      17 BARBARA
             JM LUCERA

Subtotal:    24.79

TIP AMT....  5.00

TOTAL CHG... 29.79

SIGNATURE ___Jm w/Lucera___

THANK YOU

OUTBACK #1822
3215 SW College RD
OCALA, Fl 33674

TERMINAL I.D.: 20102204
MERCHANT #  : 30675200220004

AMEX                             SRV 44
*************1006
SALE                             11/01
BATCH: 000036          INVOIC.: 1073##
DATE: JUL C
RRN: 00000#

BASE        -  81

TIP

TOTAL       -  50.61

JM LUCERA

I AGREE TO PAY ABOVE TOTAL
ACCORDING TO CARD ISSUER AGREEMENT
(MERCHANT AGREEMENT IF CREDIT VOUCHER)

BELLA LUNA CAFE
3425 S.W. COLLEGE ROAD
OCALA FLORIDA 34474
DATE:        JUL23'01 09:47PM
CARD TYPE:   AMEX
ACCT #:      37853044208i006
EXP DATE:    11/01
AUTH CODE:   560394
CHECK:       339
TABLE:       31/1
SERVER:      16 MIGUEL

SUBTOTAL $........................

TOTAL GRATUITY $

TOTAL CHARGE $   70.61

SIGN HERE

Rebecca Isom-Lucera
Jon Lucera

Rebecca Isom-Lucera
Jon Lucera

Rebecca Isom-Lucera
Jon Lucera

D00091

Restaurant Bar & Brewery
2505 SW College Road
Ocala, FL 34474
352 237 8182

07/21/20
3/300

Server: Steve
3:25 PM
Table 103/1

AMEX
Card #3785304442081006
Magnetic card present: LUCERAJM
Approval: 586662

Amount:           34.57

+ Tip:             6.00

= Total:          40.57

Approval: 586662

Scratch Food and Drink.
Whatever-It-Takes-Service
Being Special

Customer Copy

Rebecca Isom-Lucera
Jon Lucero

Server: Url
10:14 PM
Table

Card #3785XXXXxxxx1006
Magnetic card present: LUCERAJM
Approval: 588298

Amount.          125.23

+ Tip:            15.00

140.23

Approval: 58..98

Rebecca Isom-Lucera
Jon Lucero
Joe Schroufer

1048605
Exp .101
1/10027

DLR# 1262708 TID# 03

PUMP# 05 CREDIT/SELF
Blue @ $1.289/9
VOLUME 14.275 GAL

GAS TOTAL      $ 18.40
TOTAL          $ 18.40

AMERICAN EXP

XXXXXXXXXXX1006

REF#56?425 29950025
Jul 23-20aD 16:28

B...913
3445 SW COLLEGE
OCALA, FL 34474
352-237-1001
Date:       Jul20'01 09:39PM
Card Type:  Amex
Acct #:     3785304442081006
Exp Date:   11/01
Auth Code:  509953
Check:      1058
Table:      85/1
Server:     140 MICHELLE
VSCA: Auth Driver
            JM LUCERA

Subtotal:        30.05

Tip:              5.05

Total:           35.05

Signature
I agree to pay above total
according to my card issuer
agreement.

Jon Lucero
Rebecca Isom-Lucera

D00092

**FRANKLIN, MARGARET (SBMS)**

| | |
|---|---|
| From: | BENTLEY, CHERYL L (AIT) |
| Sent: | Wednesday, August 22, 2001 10:17 AM |
| To: | KLIMAS, JIM (SBMS) |
| Cc: | FRANKLIN, MARGARET (SBMS) |
| Subject: | Joe Schnaufer - Notes from Phone Call |

| | |
|---|---|
| Importance: | High |
| Sensitivity: | Confidential |

Jim,

Below are the questions and notes from my conversation with Joe Schnaufer yesterday regarding Rebecca and Jon.

#1
CB - How did the meeting come to be setup? Why were they out there?
JS response: "Both of them were interested in pursuing opportunities. I made it well known to my whole team in Rantoul if there were opportunities and they were interested, to give me a call, alot of people came down (ie: Bruce Larson, Victoria Bean, Gloria Jackson).

#2
CB - Did you provide any direction or dicusss code code listing regarding expense reporting?
JS response: "I didn't provide any direction regarding the cost codes, I would not incur any of the costs for their visit. I did not agree to pick up any of the expenses. My assumption was that they were responsible for making their own arrangements."

#3
CB - Was notification provided to Jack before the trip took place by you?
JS response: "No - I didn't make any arrangements with Jack. I left it up to them to arrange the proper permission, etc. If people were interested in the past in interviewing, they typically came to me for approval (when in Rantoul). I don't know if they took work days, vacation days, I don't know what authorization they got. I am the Director of the FL call center, not Rantoul."

#4
CB - What jobs did they interview for?
JS response: "Rebecca interviewed for Area mgr, and John interviewed for Mgr position. I have 57 open manager positions."

#5
CB - Where they both posted?
JS - "Yes, the mgr positions were posted prior to me coming to FL, the position that Rebecca interviewed for is being pulled down this Friday.

#6
CB - Did either of them go through formal interviews?
JS - "No, it was an informal process. I know their work history, I was happy to show them around. I have even been a tour guide for some when they come down."

#7
CB - Was John offered a position? if so, when?
JS - Yes, a couple of week ago. I'd have to check my calendar for the exact date".

#8
CB - Was Rebecaa offered a position? if so, when?
JS - No, she has not been extended an offer, but she is one of my top candidates.

#9
CB - Was John offered the relo package? If so, which one?
JS - Yes he said, it was through Americorp, and was the SBC mgmt package.



EXHIBIT

3

D00102

#10
CB - Was Debbie (Thompson) notified prior to John being extended the offer?
JS - I'm not sure, I'll need to check with Jodi as I was not directly involved in the offer.

#11
CB - Were any parameters discussed regarding weekend travel and expenses?
JS - No.

#12
CB - One final question regarding an expense submitted: did you attend a dinner with Rebecca and Jon on Saturday?
JS - Yes.

After discussing with Joe the above questions, I also requested dates for the offer, acceptance of the offer, and relo package. I also sent an email to Courtney requesting a copy of the repayment agreement.

In addition - Jack did advise me that Rebecca and Jon just purchased a home in IL about 4 weeks ago. I have not confirmed this information with either employee.

Cheryl

D00103



July 1, 2002

To Whom It May Concern:

I, Elizabeth Ross, have not approved any expense reports for Ms. Lucera at any time. Under normal business operations, I am not authorized to sign expense reports for the Rantoul call center. I had never been requested to review and approve an expense document from Ms. Lucera.

Signed,

*Elizabeth A. Ross*

Elizabeth Ross

EXHIBIT

4

D00274

Rebecca Isom-Lucera

# ✕ cingular™
#### WIRELESS

## Incident Report

| | |
|---|---|
| Region/City: | Great Lakes Region/Rantoul, IL Call Center |
| Physical Location Where Act Occurred: | 1 Aviation Dr., Rantoul, IL 61866 |
| Date Discovered: | 8/20/01 |
| Employee Net Credited Service Date: | 4/17/95 |

☐ Bargained    X Non-bargained

### Summary of Investigation: Chronology of Events

- Jack Johnston, started a new assignment on 6/25/01, as Director – Rantoul Call Center. Within the 1st week of Jack Johnston new assignment, he informed both Area Managers – (Rebecca Isom-Lucera and Deborah Thompson) that he wanted to see all expenditures at all levels of the department.
- Before Rebecca went on an interview trip, Jack informed mgmt he changed the existing practice of reimbursing interview trips & this practice would cease.
- Rebecca confirmed her knowledge of this policy change On 7/19/01 @7:34 am, in an e-mail from Rebecca to Connie Gass (Manager Rantoul Call Center) , in bold, "I want you to be aware Jack may push it back and you may want to let Anita (Rantoul Customer Service Rep who reports to Connie Gass) know this." (In the statement from Rebecca it is referencing expenses from an interview trip.) Later that day, Rebecca Isom-Lucera and Jon Lucera (Manager Rantoul Call Center) left to go to Ocala for their interview.
- Rebecca traveled on company travel – interview trip without prior approval.
- Rebecca told another Area Manager she was not going to tell Jack she went on the trip.
- The trip Rebecca & Jon took to Ocala, Florida was from 7/19 – 7/24. Reviewing the expense archives for interview trips, no other trips were for that length of time, most were a few days
- Rebecca did not apprise Jack of the expenses. Rebecca and Jon Lucera did not go through proper reimbursement procedures, when they submitted their expense report to Liz Ross, who has no relevant functional organizational and or reporting relation. The expenses for Rebecca Isom-Lucera and Jon Lucera were submitted on 1 expense report. From the SBC Travel Policy Section 4.2 Spousal Travel – "With Advance approval from the employee's supervisor," the 2 could have filed jointly.
- Advance approval was not obtained from either employee's supervisor.

Rebecca made a significant error in judgement. Her behavior was inappropriate and unacceptable. She was AWOL for a week, & circumvented her Director regarding the expenses. She knew the expenses should not be reimbursed and she submitted them anyway and to another Director and never informed her Director. On 8/30/01, Rebecca Isom-Lucera was terminated.

Ethics Office Concurrence: _____Sylvia Holler _____8/30/01_____

(name/date)

**EXHIBIT**

5

**Action Taken:**

D00084

4/01

| | Disciplined: |
|---|---|
| | ☐ Verbal Warning/Counseling |
| X ☐ Terminated | ☐ Written Warning |
| | ☐ Suspension |
| | ☐ Other Discipline |
| | Describe: _____ |

D00085

Jon Lucera

# ✕ cingular™
#### WIRELESS

## Incident Report

| | |
|---|---|
| Region/City: | Great Lakes Region/Rantoul, IL Call Center |
| Physical Location Where Act Occurred: | 1 Aviation Dr., Rantoul, IL 61866 |
| Date Discovered: | 8/20/01 |
| Employee Net Credited Service Date: | 9/11/97 |

| ☐ Bargained | X Non-bargained |
|---|---|

**Summary of Investigation:**

- The trip Jon Lucera,(Manager Rantoul, IL Call Center ) and his wife Rebecca Isom-Lucera, (Area Manager Rantoul, IL Call Center )took to Ocala, Florida was from 7/19 - 7/24. Reviewing the expense archives for interview trips, no other trips were for that length of time, most were a few days

- In a conversation with Debbie Thompson, Jon Lucera's Manager, Deb said she first knew about the trip to Florida when Rebecca came to her and discussed it. Due to this factor she did not consider Jon AWOL. However, Deb could not attest to if Jon came to her or not, but their was no formal approval notification or corresponding approval from Deb.

- Rebecca and Jon Lucera did not go through proper reimbursement procedures, when they submitted their expense report to Liz Ross, who has no relevant functional organizational and or reporting relation. The expenses for Rebecca Isom-Lucera and Jon Lucera were submitted on 1 expense report. From the SBC Travel Policy Section 4.2 Spousal Travel – "With Advance approval from the employee's supervisor," the 2 could have filed jointly. Advance approval was not obtained from either employee's supervisor

- Jon's stated, because Rebecca is at the same level as Thompson, the expense documentation for both must be signed by a person at a higher level than Thompson, is a factual statement. Although, the appropriate next higher level would be Jack Johnston, not Liz Ross.

- Jon was issued an incident report for attempting to process an expense reimbursement in conjunction with those of his wife, an employee, outside of established approval channels & circumvented proper channels. His actions were unacceptable and of poor quality decision making, they could create a perception of potentially unethical motives. By not following established protocol Jon was informed to re-submit the expenses for final approval.

| | |
|---|---|
| Ethics Office Concurrence: _____Sylvia Holler \_\_\_\_8/29/01_____ | **EXHIBIT** |
| (name/date) | 6 |

**Action Taken:**

| Terminated | Disciplined: |
|---|---|
| | ☐ Verbal Warning/Counseling |
| | ☐ Written Warning |
| | ☐ Suspension |
| | X☐ Other Discipline |
| | Describe: Incident Report |

D00148

4/01