UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| REBECCA LUCERA, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Baker |
| | ) | |
| | ) | No. 02-2268 |
| v. | ) | |
| | ) | |
| CINGULAR WIRELESS, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

### AFFIDAVIT OF CONNIE GASS

I, Connie Gass, being first duly sworn on oath, depose and state as follows:

1.  I am currently employed as Sales Support Engineer by Cingular Wireless in the Rantoul Call Center.

2.  From approximately March 2000 through the end of August 2001, I was employed by Cingular Wireless as a Technical Support Leader in the Rantoul Call Center. Beginning in the Spring of 2001, I began reporting directly to Rebecca Lucera.

3.  On July 17, 2001, I had a telephone conversation with my immediate supervisor Rebecca Lucera during which I asked her whether Anita Moxley, a customer service representative under my direct supervision would be reimbursed for an interview trip she had taken to a Call Center located in Johnson City, Tennessee.

4.  Ms. Moxley had traveled to Johnson City on July 16, 2001 and returned to the Rantoul Call Center on July 17, 2001. I was out of the office on July 17th when Ms. Moxley returned to the office.

5.  Some time between 9-10:00 a.m. on July 17, 2001, Ms. Moxley contacted me on my cellular telephone and advised me that she had approached Rebecca Lucera to discuss her trip to Johnson City and that Ms. Lucera had informed her that any expenditures Ms. Moxley had incurred from her trip would not be covered by the Rantoul Call Center.

Chicago 48458 1

1

EXHIBIT M

6.   On July 17th after my conversation with Ms. Moxley, I contacted Ms. Lucera and she indicated to me that the Rantoul Call Center should not be paying for Ms. Moxley's expenses for her interview trip to Johnson City.

7.   It was evident to me based on my conversation with Ms. Lucera on July 17, 2001, that it was Ms. Lucera's position that expenses for interview trips to other locations would not be reimbursed by the Rantoul Call Center.

8.   On July 18, 2001, I sent Ms. Lucera an e-mail regarding Ms. Moxley's "release date" and requesting clarification regarding payment of her interview expenses. A true and accurate copy of the e-mail is attached to this Affidavit as Exhibit 1. In my e-mail I expressed concern about the inconsistency in the handling of expense reimbursements.

9.   On July 19th, Ms. Lucera responded to my July 18th e-mail and stated that Carla Gass was the only individual whose expenses had been paid by Rantoul. According to Ms. Lucera, "[a]ll other expenses have come from the other markets job codes, including Ocala & Cedartown." See July 19, 2001 e-mail attached as Exhibit 1. She also stated that I should "be aware that Jack may push it back" and that I should let Ms. Moxley know. See Exhibit 1.

10.  On August 28, 2001, I received a telephone call from Margaret Franklin, Human Resources Consultant regarding my communications with Ms. Lucera related to whether Rantoul Call Center would reimburse employees for expenses incurred during interview trips to other locations. During the telephone conversation with Ms. Franklin, I relayed to Ms. Franklin that it was evident to me based on my conversation with Ms. Lucera on July 17, 2001, that Ms. Lucera's position was that expenses for interview trips to other locations would not be reimbursed by the Rantoul Call Center.

11.  After my conversation with Ms. Franklin, I sent Ms. Franklin an e-mail summarizing my July 17th conversation with Ms. Lucera and attaching my July 18, 2001 e-mails to Ms. Lucera and Ms. Lucera's July 19th e-mail. See Exhibit 1.

12.  During the period I have worked at the Rantoul Call Center, the practice has been that employees are required to submit their requests for expense reimbursement to their direct supervisors for approval. The only circumstances under which it may have been permissible to submit expenses for approval to a supervisor outside the Rantoul Call Center would be when a supervisor had a lengthy scheduled absence and had pre-arranged for a specific supervisor outside the center to sign-off on expenditures in his or her absence.

13.  I cannot recall ever submitting an expense form for approval outside the Rantoul Call Center. If any of my direct supervisors were out of the office, I would wait for them to return to the office instead of submitting the forms for approval to a supervisor outside the Rantoul Call Center. I am unaware of any circumstances under which it would have been permissible to submit a request for reimbursement to an individual outside the Rantoul Call Center without first discussing it with a direct supervisor and receiving approval to do so.

This affidavit is based upon my personal knowledge. It is true and correct to the best of my knowledge, information and belief. If sworn as a witness, I could testify competently to the foregoing.

THIS ENDS MY AFFIDAVIT.

_____
Connie Gass

Subscribed and sworn to
before me this 16 day of
September 2004.

_____
Notary Public

OFFICIAL SEAL
CHERYL FREESE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 08/09/08

Chicago 48458 1                                                 3

## BENTLEY, CHERYL L (AIT)

**From:** GASS, CONNIE R (AIT)
**Sent:** Tuesday, August 28, 2001 1:44 PM
**To:** FRANKLIN, MARGARET (SBMS)
**Subject:** Anita Moxley Expenses

Peggy,

Per your request, below is the communication piece which transpired from a phone conversation I had with Rebecca Isom on 7/17.

Anita Moxley went to Johnson City on Monday 7/16 and returned to the Rantoul Call Center on Tuesday 7/17. I was attending a meeting in Springfield on the 17th and was out of the office. Therefore, Anita visited Rebecca to discuss her trip to Johnson City. Between 9-10:00 am on 7/17 Anita contacted me on my cell phone and advised me that Rebecca informed her that release dates were put on hold til post telegence (which was scheduled to launch mid-August), as well as, any expenditures incurred from this trip would not be covered by the Rantoul call center. Anita was very upset when she phoned me. I was not made aware of these changes & advised Anita that I would look into it. I then phoned Rebecca and we had a brief conversation regarding the above & she stated that release dates were put on hold & that Rantoul should not be paying for these Anita's expenses. Rebecca could not talk long as she was meeting with Jack discussing these topics. She advised me that once she was done with the meeting she would contact me and let me know how this would be handled. Rebecca did not call me back that day, however she did send me a page stating she had information on Anita's release date (which is what prompted me to send the below e-mail).

On Wednesday morning (7/18), I phoned Terry Kirven in Johson City, TN and asked if they were going to cover Anita's expenses for her trip & she stated that they would not.

On Friday 7/20, I visited Jack directly to discuss Anita Moxley's expenses. I expressed my concern regarding Carla Gass's expenses covered by the Rantoul Call Center just a few weeks prior & felt that we needed to be consistent with how we handled similar situations. I made the recommendation that we need to put together a policy (for bargain & non-bargain employees) on traveling expenses for perspective job opportunities.

Connie

-----Original Message-----
**From:** ISOM-LUCERA, REBECCA D (AIT)
**Sent:** Thursday, July 19, 2001 7:34 AM
**To:** GASS, CONNIE R (AIT)
**Subject:** RE: follow-up

Connie,

    We will make Anitia's last day here 7/27/01. This will allow her to arrive at training and begin her new career. Secondly, Anita accepted this job with out wanting to see the call center and the area (Carla did not) Carla accepted the job the last day she was down their. These are two different situations.
    This information was brought to all the Leaders attention at a Staff meeting that we would be handling these case by case. I know you are very busy and don't get the opportunity to attend all the staff meetings. The next piece that you may want to share with Anita is Carla is the only person that we have paid for. All other expenses have come from the other markets job codes, including Ocala & Cedartown.
    Please sign off on the expense, and bring it to me. I want you to be aware Jack may push it back and you may want to let Anita know this.

Anita also needs to understand, that she can not grieve now that she has accepted a managers position, it is a conflict of interest and their is no union in Johnson City. We are also not obligated to give moving days. (Just and FYI) We can discuss....

I spoke with Jack yesterday, he said he was going to call Mike today!!!! I will remind him. Let Mike know he will not need to change any dates.

Please let me know if you need more information,
Rebecca

-----Original Message-----

**EXHIBIT 1**

1

D00121

From:     GASS, CONNIE R (AIT)
Sent:     Wednesday, July 18, 2001 3:35 PM
To:       ISOM-LUCERA, REBECCA D (AIT)
Subject:  RE: follow-up

Rebecca,

I left a message for Terry Kirven to call me.

Since Johnson City only has one management training class taking place during the month of August, can we send Anita to the training class 7/30-8/3, then she can return back to Rantoul 8/6-8/17 and her start date in TN would be 8/20? School starts on 8/19 and if Anita does not move until 8/27 her kids will miss the first 5 days of school?

Also, Anita's expenses for going to TN were $580.74. If we have made the determination that the Rantoul Call Center is not going to pay for these types of expenses moving forward, then I recommend that this be communicated as a policy for consistency purposes. However, Anita is well aware that Carla's expenses (& several others) were covered with the Expense Reimbursement vs. the relocation package. Therefore I feel that we are obligated to pay for her expenses. If not, I am 100% sure that grievances will be filed for inconsistency/preferential treatment. Let me know your thoughts on this---Thanks, Connie

p.s.---Please contact Mike regarding my release date. Mike has already submitted the paperwork to HR last Friday so if it is going to change you need to call him::>))

> -----Original Message-----
> From:    ISOM-LUCERA, REBECCA D (AIT)
> Sent:    Wednesday, July 18, 2001 2:54 PM
> To:      GASS, CONNIE R (AIT)
> Subject: RE: follow-up
>
> Connie,
>
> Will 8/27/01 work? I will have you released shortly also :>)
>
> > -----Original Message-----
> > From:    GASS, CONNIE R (AIT)
> > Sent:    Wednesday, July 18, 2001 10:02 AM
> > To:      ISOM-LUCERA, REBECCA D (AIT)
> > Subject: follow-up
> >
> > Good Morning Rebecca,
> >
> > I received your page yesterday regarding Anita's release date. Please let me know asap what the new release date is so I can contact Terry Kirven immediately to make new arrangements for her arrival.
> >
> > Thanks,
> > Connie

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| REBECCA LUCERA, ) | |
| ) | |
| Plaintiff, ) | Judge Baker |
| ) | |
| ) | No. 02-2268 |
| v. ) | |
| ) | |
| CINGULAR WIRELESS, ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |

## AFFIDAVIT OF ANITA MOXLEY

I, Anita Moxley, being first duly sworn on oath, depose and state as follows:

1. From approximately March 1997 through the end of July 2001, I was employed as an on-line representative for technical support in the Rantoul Call Center. In July 2001, I reported directly to Connie Gass.

2. On July 14, 2001, I traveled to Johnson City, Tennessee for an interview at the Cingular Call Center located in Johnson City. I returned to work at the Rantoul Call Center on the morning of July 17th.

3. My direct supervisor Connie Gass was out of the office on July 17th when I returned to work. Therefore, I called Connie Gass' immediate supervisor Rebecca Lucera to discuss approval for reimbursement of my expenses for my trip to Johnson City.

4. During my telephone conversation with Rebecca Lucera on July 17, 2001, she informed me that any expenditures I had incurred in connection with my trip to Johnson City would not be covered by the Rantoul Call Center.

5. Ms. Lucera indicated that due to the uncertainty of the future of the Rantoul Call Center many Rantoul employees were exploring options at Cingular locations outside Rantoul and a decision had therefore been made that Rantoul would no longer bare the costs of such trips. She informed me that Johnson City would need to pay for my travel expenses.

Chicago 48475.1                        1                        EXHIBIT N

6. During the time that I worked at the Rantoul Call Center, the policy was that employees were required to submit their request for expense reimbursement forms to their direct manager for approval who would then either sign-off on it or deny it. This policy remained in effect when Jack Johnston became Director of the Rantoul Call Center.

7. There are no circumstances I am aware of when it would have been appropriate for an employee of the Rantoul Call Center to submit his or her expense forms to a manager outside the call center for approval.

8. I am unaware of any occasions when an employee at Rantoul submitted an expense reimbursement form for approval to a Director or manager outside the Rantoul Call Center.

This affidavit is based upon my personal knowledge. It is true and correct to the best of my knowledge, information and belief. If sworn as a witness, I could testify competently to the foregoing.

THIS ENDS MY AFFIDAVIT.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on  9/28/04  .

*Anita Moxley* (signature)
Anita Moxley



July 1, 2002

To Whom It May Concern:

I, Elizabeth Ross, have not approved any expense reports for Ms. Lucera at any time. Under normal business operations, I am not authorized to sign expense reports for the Rantoul call center. I had never been requested to review and approve an expense document from Ms. Lucera.

Signed,

*Elizabeth A. Ross*

Elizabeth Ross

**EXHIBIT**

O

D00274